NORTH TEXAS LUMBER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5208.    Promulgated September 1, 1927.

1. The petitioner in 1916 granted an option to purchase its property and in that year received notice that the option would be exercised and that the purchaser approved the title. In 1916 there was no delivery or tender of a deed and no delivery of possession of the property. Before the close of 1916 the purchaser was ready, able and willing to perform the contract but had made no tender of the purchase price. In 1917 payment was made and deed delivered. The petitioner kept its accounts and made its returns upon an accrual basis. *Held* that title passed in 1917, that the purchase price first accrued in 1917, and that any gain is to be reported as income in 1917.

2. A contract to sell property does not pass title to the property or in the absence of tender or delivery of the property or of title thereto, give the vendor a right to maintain an action for the purchase price.

*Joseph J. Eckford, Esq.*, for the petitioner.
*S. S. Faulkner, Esq.*, for the respondent.

The petitioner seeks a redetermination of a deficiency of $19,-733.90 in income and profits taxes for 1917, arising from the denial by the Commissioner of a claim for the abatement of an assessment of additional tax. The only question involved is whether the profit from the sale of certain timber lands was income to the petitioner in the year 1916 or in the year 1917.

### FINDINGS OF FACT.

The taxpayer, a corporation, was organized in November, 1909, under the laws of the State of Texas and was engaged in the business of operating a saw mill, and buying and selling timber land, as well as the manufacture and sale of rough and finished lumber. The corporation conducted the business continuously from its inception in 1909 down to the year 1917, when liquidation was effected subsequent to disposal of the timber land. The authorized and fully paid capital amounted to $50,000. The books of the taxpayer were kept on an accrual basis.

During the summer or fall of 1916, officers of appellant negotiated with the officers of the Southern Pine Lumber Co. for the sale of timber lands, known as the Knox Lands, title to which was in appellant and also in the Clark & Boice Lumber Co. and a minor, Kelly Morse. On December 27, 1916, the price was agreed upon and an option contract executed at Dallas, Tex., reading as follows:

STATE OF TEXAS
COUNTY OF DALLAS.

THE FOLLOWING CONTRACT AND AGREEMENT is this day entered into by and between Clark & Boice Lumber Company, North Texas Lumber Company, and Wesley Morse, Parties of the First Part, and the Southern Pine Lumber Company, Party of the Second Part:

In consideration of the sum of One Hundred ($100.00) Dollars to Parties of the First Part paid by Party of the Second Part Parties of the First Part hereby grant, contract and convey to Party of the Second Part an option for the period of ten (10) days from the date hereof, to purchase of one or more of the Parties of the First Part the hereinafter described property upon the terms and for the consideration hereinafter named.

The property to be purchased from the Clark & Boice Lumber Company consists of the property out of the Jose Maria Mora grant in Anderson County, conveyed to Clark & Boice Lumber Company by Fannie M. Shelton and husband, and Orra G. More, by deed dated July 25, 1916, and duly recorded in Vol. 113, Page 612, Deed Records of Anderson County, Texas, to which deed and the record thereof reference is here made for a more particular description of

said property, consisting of about one thousand and fifty four (1054) acres of land.

From the North Texas Lumber Company—all of the property situated in Anderson and Cherokee Counties, Texas, described in a certain deed from Hiram Knox and Mary S. Knox, to North Texas Lumber Company, dated May 18, 1915, and duly recorded in the Deed Records of Cherokee and Anderson Counties, Texas, to which deed and record thereof reference is here made for a more particular description of said property, consisting of about 14,000 acres of land.

Also from the North Texas Lumber Company—the timber rights vested in it, the said North Texas Lumber Company, by a certain contract between C. Lombardi and Caroline Ennis Lombardi, and the North Texas Lumber Company, dated March 8, 1915, upon about 1213 acres of land in the Highsmith survey and T. P. Hotchkiss survey in Anderson County; reference being here made to said contract for a more particular description of said land. Also the timber rights vested in James Kelly Morse by a conveyance from the State of Texas upon one hundred (100) acres of land situated in Cherokee County, Texas, the said conveyance from the State of Texas being dated in the year 1916, and the only contract of that nature existing between the State of Texas and the said James Kelly Morse.

The consideration for said conveyance is the sum of Two Hundred Thirteen Thousand Five Hundred ($213,500.00) Dollars, cash, and the agreement and assumption by the said Southern Pine Lumber Company of the unpaid purchase money, principal and interest, against any of the properties above named and the obligation of the grantee, as evidenced by the various instruments herein referred to, and all unpaid taxes against said land. Land, timber rights, and other rights is to be conveyed by Parties of the First Part to Party of the Second Part by Special Warranty deed, but any rights that any of said Parties of the First Part may have by reason of warranties and the like, are to be conveyed and vested in said Southern Pine Lumber Company.

In case said Southern Pine Lumber Company exercises the option herein granted within the time herein named then the One Hundred ($100.00) Dollars paid at the time of the execution of this instrument, receipt of which is hereby acknowledged, is to be credited upon and to be a part of the cash consideration above named of Two Hundred and Thirteen Thousand Five Hundred ($213,500.00) Dollars. The Southern Pine Lumber Company is to make known the exercise of this option by a written instrument delivered to the Clark & Boice Lumber Company at its office in Dallas, Texas, within ten (10) days or mailed to it by registered letter within said ten (10) days from some point in the State of Texas, the date of mailing to be indicated by the post mark upon such letter. A satisfactory indemnity obligation is to be executed by Wesley Morse to the Southern Pine Lumber Company to protect it in accepting a deed from James Kelly Morse to his rights to the one hundred (100) acres hereinabove mentioned.

WITNESS OUR HANDS RESPECTIVELY this 27th day of December, A. D. 1916.

NORTH TEXAS LUMBER CO.

By Wesley Morse, Pres.  (Signed)

CLARK & BOICE LUMBER CO.

By F. L. Clark, Mgr.  (Signed)

WESLEY MORSE (Signed)

Parties of the First Part.

SOUTHERN PINE LUMBER CO.

By L. D. Gilbert, Secy. & GM.  (Signed)

Party of the Second Part.

Gilbert, the secretary and general manager of the Southern Pine Lumber Co., who negotiated and executed the option on behalf of that company, received on December 27, 1916, from the attorney for the North Texas Lumber Co. an abstract of title and written opinion of the attorney, and stated that he was satisfied with the title and his company would assume one suit with respect to the title which was pending. The Southern Pine Lumber Co. required a few days in which to arrange to borrow the money to complete the purchase.

On December 29, 1916, the Southern Pine Lumber Co., arranged for a loan of $200,000 from the Boatmen's Bank of St. Louis, Mo. The notes on which such loan was made were mailed from Texarkana, Tex., to said bank on Saturday, December 30, 1916. In the normal course of the mails they would have arrived in St. Louis on Sunday, December 31, 1916. On December 30, 1916, Gilbert telegraphed Clark, vice president of petitioner, that the Southern Pine Lumber Co. would exercise the option and was prepared to complete the transaction and pay over the money as soon as the papers were prepared. Clark received this telegram on December 30, 1916, and telephoned his attorney and the president of his company that the deal was closed and ordered the men who were starting to build a mill on the property dismissed. These employees stopped work on December 30, came home the next day, and were not paid for any work done after December 30, 1916. The written instruments, which were required to complete the transfer, were delivered on January 5, 1917, at which time the balance of the purchase price was paid.

The Southern Pine Lumber Co., the purchaser, at the date of contract, December 27, 1916, and continuously to December 30, 1916, and afterwards, was amply solvent and ready, willing and able to carry out said contract of December 27, 1916.

The purchasing company rendered the property in April, 1917, for taxes, the assessment being dated back under the Texas law, to January 1, 1917.

Appellant did not report the profit from this sale until it filed a supplemental income-tax return for the year 1916, in April, 1918. The Commissioner determined that appellant realized a profit of $79,057.95 from the sale of such land, which was income to it in 1917 and assessed the deficiency accordingly.

OPINION.

PHILLIPS: The single question involved in this appeal is whether the profit from the sale of the timber lands of the petitioner to the Southern Pine Lumber Co. is income in 1916 or in 1917. The undisputed evidence is that on December 27, 1916, the parties arrived at an agreement as to the value of the land and the purchaser expressed satisfaction with the title. No contract of sale was made

on that date, however, for the purchaser found it necessary to make arrangements for financing the purchase price. A ten-day option was granted the Southern Pine Lumber Co. On December 30, 1916, it gave notice of its intention to exercise such option, thereby creating an enforceable contract between the parties for the sale of the property. It is contended that at that time the sale of the property became executed, that the purchaser acquired title and that the purchase price became due to the petitioner. The deed to the property was delivered and the purchase price paid on January 5, 1917.

In support of its contention, petitioner points out that on December 30, 1916, the purchaser was ready, able, and willing to perform the contract, that it had already passed upon the title of the petitioner as satisfactory, that the petitioner withdrew from the property the workmen who had theretofore been engaged in the construction of a mill, that upon the closing of the title adjustments were made as of January 1, 1917, and that the purchaser paid taxes after January 1, 1917. None of these factors, however, seem sufficient to vest title to the property in the purchaser or to entitle the seller to have maintained an action in 1916 for the purchase price.

We do not question that equitable title passed to the purchaser at the time the option was exercised and a contract to sell came into effect, so that any loss or damage to the property would have been the loss or damage of the purchaser. We do not understand, however, that because equitable title may have vested, the vendor then has a legal right to recover the purchase price, which is the principal question here involved since the books of the petitioner were kept upon an accrual basis.

Ordinarily one who has entered into a contract for the sale of property, whether real or personal, has no right to recover the purchase price until the delivery of the property sold. In the case of real property a right to recover by way of an action for specific performance may exist when a proper tender has been made. Here there was no delivery of the property to the purchaser either by giving it possession of the property, by delivery of a deed, or otherwise, until January 5, 1917, and no tender of delivery, and it was not until 1917 that any right to demand or receive payment of the purchase price arose.

Counsel for the petitioner calls attention to the decision of the United States District Court in *Davidson & Case Lumber Co.* v. *Motter*, 14 Fed. (2d) 137; 5 Am. Fed. Tax Rep. 6126. The court in that case appears to decide that title passed to the purchaser despite the fact that no conveyance was made and that the vendor remained in possession. There is room in that case, however, for the belief that the possession of the vendor continued under an agreement with the purchaser and was that of a tenant. We have no such situation here,

for, while the taxpayer removed its employees from the property on December 30, 1916, the purchaser did not go into actual possession either directly or through tenants or otherwise.

In its last analysis the contention of the petitioner is that the vendor of property becomes entitled to receive the purchase price of property at the time a contract for the sale of the property is entered into, if the title is satisfactory and the purchaser able to perform the contract. Certainly this is not the general rule throughout the United States and no decisions have been cited showing it to be the law in Texas. While we have preferred to base our decision upon the broader ground, it might be noted that Kelly Morse, a minor who held title to a part of the tract to be conveyed, was not a party to the contract, and for that reason, even though such a contract could be considered as a sale, the title which the petitioner was to deliver was incomplete.

Reviewed by the Board.

*Decision will be entered for the respondent.*